The opinion of the court was delivered by
Nicholls, C. J.
The prayer of the plaintiffs in this case was that the Immanuel Presbyterian Church be cited; that a receiver be appointed to take charge of whatever is left of said Kaspar Auch Fund, and of the property of said corporation, with power in said receiver to sue and recover from the debtors thereof any part of said fund which may have been loaned to them, to proceed with the execution of the judgment against the said Owen Riedy, and to sue the Trustees who participated in the misapplication of said Auch Fund and any parties who may have knowingly received part of said fund for the recovery thereof, and after due proceedings that the charter of said Immanuel Presbyterian Church be declared forfeited and the said Kaspar Auch Trust Fund, or so much thereof as may be recovered, be turned over to the other Presbyterian churches, to be administered for the benefit of the poor, in accordance with the will of the late Kaspar Auch.
The demand was based upon allegations that the defendant was incorporated in New Orleans by notarial act, in 1880.
That Kaspar Auch died in 1886, leaving a will by which he bequeathed the residue of his property to the several Presbyterian churches of this city “to the end that the poor of said churches in this city may be cared for”.
That under the said will the Immanuel Presbyterian Church of this city received in 1887, from the executors of the said Kaspar Auch, about eleven thousand dollars, and seventy premium bonds.
That on the 9th of June, 1888, the Board of Trustees of said church adopted certain by-laws, which were unanimously adopted by the congregation. on the 13th of June, 1888. declaring that “The money bequeathed to this church by Kaspar Auch, deceased, shall form a poor fund, the interest and revenue therefrom shall be for the benefit of the poor of this church, according to the wish of the testator. The capital shall remain intact.”
That the said church elected one Owen Riedy as its pastor at a fixed salary, which they bound themselves to pay, and did not enforce the provisions of. the charter requiring members to pay contributions, so *1313 that the salary of said pastor was not being paid, and neither the elders of said church nor- its trustees performed their duties in the promises.
That contrary to the rules of the general assembly of the Presbyterian churches, the said Owen Riedy who was pastor of said church was, by the charter, made one of the trustees of said church and was re-elected a trustee every year up to and including 1897.
That in violation of the rules of the general assembly of the Presbyterian churches and of the charter of said church, parties who had not paid their contributions were allowed to vote for trustees, and persons who were in default for their dues or contributions were, in violation of the requirements of the charter, elected as trustees.
That from the time of its incorporation, said church has been unable to sustain itself, has contracted obligations towards its pastor which it was unable to meet, and is now under obligations and expenses which it is unable to meet.
That the members of said church congregation not paying their contributions, and the elders and trustees not enforcing the charter and by-laws, the salary of the pastor had not been paid to him for several years, when on the 3rd of September, 1888, the Board! of Trustees borrowed from said Auch Fund the sum of $2,370.36, at three per cent. interest, and therewith paid said pastor his back salary.
That from the time said church received said Auch Fund, the members and trustees ceased to pay contributions and every year, in order to pay the salary of the pastor and other expenses of the church, said Board of Trustees borrowed from said Auch Fund at three per cenl. without security, when on the 23rd of February, 1897, it had borrowed from said fund the sum of $8,741.43, plus twenty premium bonds. That in addition thereto, the said church through its Board of Trustees, had given to its pastor, the said Owen Riedy, in compensation for his services in collecting and managing said Auch Fund, fifty premium bonds belonging to said Auch Fund.
That in or about the month of March, 1897, three of the Trustees who had participated in the misuse and misappropriation of the said Auch Fund, in order to escape liability for their wrongful acts, virtually took possession of the affairs of said church, passed a resolution to dismiss the said Owen Riedy as a Trustee, and brought suit against said Owen Riedy for the return of all the money he had received in compensation of his services as pastor for twenty years, on the ground *1314 that said money was a trust fund and had been misapplied. That under the charter seven persons constituted the Board of Trustees, and that therefore it required four members to make a quorum,.
That the rest of the money and securities belonging to said Auch Fund, say about three thousand dollars, were taken by said three trustees, and others claiming to be the representatives of the church.
That from that time they prosecuted their suit against Owen Riedy, finally obtaining against him on the 26th of June, 1899, a judgment for $10,652.75, the full amount received by him as a salary for his services as pastor for nearly twenty years, but refusing to pay his salary, for which said church had bound itself.
That said church through its Board of Trustees had placed their church edifice in the name of said Owen Riedy without taking a counter letter from him, and used some of the Auch Fund to pay costs of court, and gave to their lawyer, Mr. B. R. Forman, a note of $450 belonging to the Auch Fund, as fees for recovering said church property.
That during the pendency of the said suit against Owen Riedy the said Trustees of said church have been misusing and misapplying said Auch Fund, lending it to the members of the Board without security, paying to C. C. Luzenberg, Esq., two hundred and fifty dollars for defending a criminal prosecution for perjury against their president, F. Manning, and paying the salary of their said pastor and the expenses of said church, and generally squandering said fund until they have now only a small part of it on hand.
That they have Issued execution against said Owen Riedy, but will hardly realize four thousand dollars on the property which they have seized — that said Owen Riedy, however, has taken a devolutive appeal from said judgment against him.
That the congregation of said church is now virtually reduced to the members of the families of the Board of Trustees, and that neither the congregation nor the elders are exercising any restraint on the Trustees, who are misusing, misapplying, and squandering a fund bequeathed for the relief of the poor, which said beneficiaries have never benefited thereby, and that some of the present Trustees were on the Board when said fund was used to pay the salary of Owen Riedy.
That said Immanuel Presbyterian Church by their acts of breach of trust have forfeited their rights under their charter, which charter *1315 should bo declared forfeited, and a receiver should be appointed to take charge of whatever is left of said Auch Fund and of the assets of said church.
The District Court rendered on said application, an ex parte order that Edgar M. Cahn be appointed and sworn as receiver of the Immanuel Presbyterian Church of New Orleans, that he take possession of all the property belonging to the Raspar Auch Fund and of the property of said corporation, with power in said receiver to sue and recover from the debtors thereof, any part of said fund which may have been loaned to them or which they may have in their possession; that he proceed with the execution of the judgment in favor of said church against Owen Riedy and sue the Trustees who participated in the misapplication of said Auch Fund, and any parties who might have knowingly received part of said fund, for the recovery thereof. That he furnish bond and security in the sum of one thousand dollars.
Defendant appealed suspensively from this order.
On filing the record here, the defendant filed the following assignment of errors:
“Now comes the defendant and appellant by undersigned counsel and assigns for error apparent on the face of the record:
(1). The State of Louisiana has no legal interest in the matters alleged in the petition.
(2). The Attorney General is legally charged with no duty in respect to the matters alleged in the petition.
(3). The civil courts have no jurisdiction or power to appoint a receiver to a live, going church corporation. It is a violation of the fundamental law separating church and State. If any power exists it can be exercised only after a dissolution of the corporation.
(4). The ex-parte appointment of a receiver to a live and going corporation is void and unauthorized by law.
(5). The Act No. 159, 1898, page 312, does not apply to church corporations, but only to business and private corporations of that character. ■
Wherefore appellant prays the order appealed from be rescinded and the proceedings herein be dismissed and for general relief.
Opinion.
Appellees in their brief say that the defendant without denying any of the facts charged, took an appeal from the order appointing a receiver.
*1316 Ail answer to this objection is that the order was granted ex parte without any opportunity afforded to defendant to resist relator’s application upon the allegations of an unverified petition, and without the production to the court of any evidence whatever in support of the same.
The allegations of the petition disclose that the defendant is a regularly organized corporation, with its property and temporal affairs in charge of Administrators or Trustees.
That the present Board is taking active steps through judicial proceedings to undo the a'cts of omission or commission of their predecessors, if such there were of which relators complain; that they have in their said capacity obtained judgment against Owen Riedy, to whom the pleadings refer, and that the judgment was in process of execution when the petition in this case was filed.
Under such circumstances we must assume that they were regularly appointed or elected under the charter. The statement made that three of the trustees had virtually taken possession of the affairs of the church; that under the charter four members were required to make a quorum, loses force in view of the subsequent allegation that the balance of the monies and securities belonging to the Auch Fund, were taken by the said three Trustees and others claiming to he the representatives of the church.
There are no parties contesting the status of these Trustees, that we are aware of, and this vague, indirect allusion to the same, has no significance.
The application for the forfeiture of defendant’s charter, and for' the appointment of a receiver, is not based upon any dissensions in the congregation or upon its property being in the hands of unauthorized agents, but upon its agents having mismanaged and still mismanaging its affairs. The case before us so far as the question of the receivership is concerned, is that of an existing corporation equipped with competent officers, having its property taken from it on preliminary proceedings, and in advance of 'judgment at the instance of parties who have no claims in, to, or upon that .property.
Corporations being artificial persons, deriving their existence directly from the State, the State has the power and'authority for good causes to take their lives from them, but it by no means follows from this that it has the right to take summarily from them either tempor *1317 arily or permanently, property which they have acquired during the existence of that life; particularly property to which neither the State nor any one else has set up any adverse claims.
We do not propose to enter into any discussion as to the facts and circumstances under which and for which the State could demand the forfeiture of the charter of a religious corporation, or to decide whether it be justified in inaugurating proceedings at the instance of a private citizen, who has no connection with the church or its property; who does not claim to be a member of the congregation or concerned legally with the fund bequeathed to the different Presbyterian churches in New Orleans “to the end that (not the poor generally) but the poor of the respective churches might be cared for”.
Appellant contends that while the motive and purpose of Kaspard Aueh in making his bequest to the different churches was to benefit the poor of the different congregations, the fund bequeathed became the absolute property of the different congregations, which they were entitled to dispose of or administer free from the supervision or control of any outside parties; that the Board of Directors or Trustees were responsible for their conduct to the congregation and not to the State, and that there is no complaining member of the congregation before the court; that if the Board should fail in any way in their duty, the proper remedy was for the congregation to change them; that even if the church stood so situated towards the fund bequeathed to it as to subject it to the possibility of having it taken from its control, and the facts of the case would warrant such a course, the mismanagement of the fund and its withdrawal from the church, would not carry with it the loss of its charter, as the administration of the fund was not part of its charter obligations, but a mere incidental matter thrown upon it by accident; that the State was without authority to connect this special matter with the general charter obligations of the church.
As the action of the court in this particular case will be made to turn upon the ex parte action of the District Court in granting- tho order appealed from, we reserve the expression of any opinion upon the questions raised until the ease shall reach us, on appeal, after trial upon the merits. The court being bound to express its opinion only so far as to show the grounds upon which it decides the application, we will confine ourselves to the point we are called upon to decide, *1318 without going into the merits of the case at large (High on Keceivers, 738).
The remedy of receivership is part of the general preventive jurisdiction of courts of equity and prospective rather than retrospective in its operation, being invoked on suitable occasions for the prevention of future injury rather than for the redress of grievances already committed.
The object sought in appointing a receiver pendente Hie is to prevent injury to the thing in controversy, the res, and to preserve it unimpaired for the security of all parties in interest, that it may be disposed of in accordance with the final decree of the court (High, Section 737).
Long acquiecence in a particular past grievance, without effort to redress it, is generally held to be a complete bar to relief sn equity as a substantive ground for the appointment of a receiver, or the granting of an injunction (High. Section 742).
It has been held under the Code of Procedure in New York, upon proceedings by the Attorney General in the nature of a quo warranto for the dissolution of a corporation and the forfeiture of its franchises, that the court has no power to appoint a receiver before judgment of forfeiture, although an injunction might properly issue, to prevent the corporation from doing any illegal act or from disposing of its funds (High, Sections 307, 751).
It is certainly a debatable question independently of the consideration of statutes whether the State, on bringing an action for the forfeiture of a charter, is concerned legally in the subject matter of the corporation pendente lite any further than to seek to withdraw from it the rights and privileges which it had conferred upon it, leaving the legal results to follow from such withdrawal to be worked out through and by the parties in interest, or as the consequence of the situation which would be developed at that time, unless it should have itself in some particular case a special direct interest in the property of the corporation, or the administration of its affairs, pending the litigation.
Let this be as it may, we are' of the opinion that the order -appealed from in this case was improvidently granted ex parte upon the allegations of a petition unsworn to, and upon the production' before the court of no evidence to support or sustain the same.
*1319 The ease falls directly under the decisions in Mestier vs. Chevalier Paving Company, 51 Ann., 142; Ober vs. Excelsior Planting Company, 44 Ann., 571; High on Receivers, Section 346; In re Cigar Company, 50 Ann., 793, 794; State ex rel, Columbia Debenture Company vs. Judge of Division “B,” 51 Ann., 468.
For the reasons assigned, it is hereby ordered, adjudged and decreed that the order or judgment of the District Court, of July 12, 1899, appealed from appointing Edgar M. Cahn, receiver of the Immanuel Presbyterian Church of New Orleans, be and the same is hereby set aside and the cause of the State of Louisiana vs. Immanuel Presbyterian Church, No. 59,836, Civil District Court, Division “B,” will be further proceeded with in the District Court according to law.